Scott Michelman, D.C. Bar No. 1006945 (pro hac vice application pending)
Paul Alan Levy
Public Citizen Litigation Group
1600 20th St. NW
Washington, DC 20009
(202) 588-1000
smichelman@citizen.org

Lester A. Perry, Utah Bar No. 02571
Hoole & King
4276 South Highland Drive
Salt Lake City, UT 84124
(801) 272-7556
lap@hooleking.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| JOHN PALMER and JENNIFER KULAS,<br><br>                             Plaintiffs,<br>                    v.<br><br>KLEARGEAR.com and FIDELITY INFORMATION CORP.,<br><br>                             Defendants. | **COMPLAINT**<br><br>Case No. 1:13-cv-00175<br><br>Magistrate Judge Paul M. Warner |

## **INTRODUCTION**

1.      Plaintiffs John Palmer and Jennifer Kulas, husband and wife (together, "the Palmers"), bring this action for damages under the Fair Credit Reporting Act and state tort law against defendant KlearGear.com ("KlearGear") for demanding payment of $3,500 that John Palmer did not owe, disparaging John Palmer's credit when he would not accede to KlearGear's

unwarranted demand, and then failing to investigate and correct the erroneous information about John's supposed "debt" after the Palmers disputed it. The Palmers also seek a declaratory judgment against KlearGear and the debt collector Fidelity Information Corporation ("Fidelity") to establish the invalidity of John Palmer's supposed "debt."

2. KlearGear's erroneous credit report has marred John Palmer's credit for more than a year. During that time, the Palmers have been delayed or denied outright in their attempts to obtain credit and suffered a variety of hardships and emotional distress as a result. In particular, in October 2013, the Palmers spent three weeks without heat in their home for themselves and their three-year-old son when their furnace broke and they were unable to obtain credit to purchase a new one. Now, the Palmers wish to sell their home and buy a new one, but they are deterred from doing so because of the negative report on John's credit.

3. KlearGear's underlying claim that John Palmer owed it money was based on an online review that his wife Jennifer wrote in February 2009 criticizing KlearGear's customer service after John placed an order with KlearGear in December 2008 and KlearGear never delivered it. According to KlearGear, this critical online review constituted a violation of a "non-disparagement clause" in KlearGear's online Terms of Sale and Use that forbade anyone who did business with KlearGear from "taking any action that negatively impacts KlearGear.com, its reputation, products, services, management or employees." This clause, however, did not appear in the Terms of Sale and Use when John did business with KlearGear; rather, the clause was added more than three years later. And even if had been present at the time of John's transaction,

the clause would be unenforceable under basic principles of contract law and under the First Amendment.

4. In sum, KlearGear attempted to punish a dissatisfied customer for his wife's criticism of KlearGear, then abused the credit reporting system in an attempt to extort money that the customer did not owe and could not possibly have owed. To obtain compensation for the harms KlearGear caused and to clear up the status of John Palmer's alleged "debt" so that he can restore his credit, the Palmers now seek relief from this Court.

## PARTIES

5. Plaintiffs John Palmer and Jennifer Kulas, husband and wife, are citizens of Utah. They lived in Bountiful, Utah, when John Palmer made an online purchase from KlearGear in December 2008 and when Jennifer Kulas wrote an online review in February 2009 criticizing KlearGear's customer service. The Palmers now live in Layton, Utah.

6. Defendant KlearGear.com is a non-public corporation in the business of selling retail goods over the internet. According to its website, KlearGear is located in Grandville, Michigan, and sells "computer-themed giftware, apparel, gadgets, and one-of-a-kind private label merchandise."

7. Defendant Fidelity Information Corporation is a non-public corporation in the business of debt collection. Its website lists its address as a post office box in Los Angeles, California. Several internet sources indicate an address for the company in Pacific Palisades, California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the Fair Credit Reporting Act claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and this Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), because those claims form part of the same case or controversy.

9. This Court also has jurisdiction over the entire action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, because none of the defendants is a citizen of the same state as the plaintiffs and the complaint seeks relief of more than $75,000.

10. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

### The Initial Order and the Online Review

11. On or about December 22, 2008, John Palmer placed an online order from KlearGear. He purchased two small items — a desk toy and a keychain — and paid for them at the time of the order via his PayPal account. The value of the entire order, including shipping, was less than $20. The items were intended as Christmas gifts.

12. The items never arrived.

13. After a few weeks passed, John attempted to contact KlearGear several times by calling the phone numbers provided on the company's website. He was unable to reach anyone at KlearGear.

14. John's wife Jennifer then contacted KlearGear's customer service representatives by email. In the ensuing email exchage, the KlearGear representative claimed that the order had not been paid for and ultimately cancelled the order.

15. On February 6, 2009, Jennifer posted a review on RipoffReport.com in which she criticized the inaccessibility of KlearGear's customer service representatives by telephone and the handling of John's order.

### KlearGear's Demand and Subsequent Retaliation Against the Palmers

16. More than three years later, on May 29, 2012, John Palmer received an email from the email address Legal@KlearGear.com demanding that John have the review on RipoffReport.com removed within 72 hours or pay KlearGear $3,500. According to the email, which was signed by Stephen Gutman of KlearGear's Legal Affairs department, John violated a "non-disparagement clause" in KlearGear's Terms of Sale and Use when Jennifer posted a critical review on RipoffReport.com.

17. The text of the "non-disparagement clause" to which the email referred forbade KlearGear's customers from "taking any action that negatively impacts KlearGear.com, its reputation, products, services, management or employees."

18. This clause did not appear in the Terms of Sale and Use when John Palmer placed an order from KlearGear in 2008.

19. Based on past versions of KlearGear's Terms of Sale and Use available at the Internet Archive, https://archive.org, it appears that KlearGear's Terms of Sale and Use did not include a "non-disparagement clause" until sometime after April 28, 2012. Thus, KlearGear's

monetary demand was based on a term that did not appear in KlearGear's Terms of Sale and Use until more than three years after John's transaction with KlearGear.

20. At the time of John's transaction with KlearGear in 2008, and (on information and belief) at all times subsequently, KlearGear's Terms of Sale and Use were drafted solely by or for KlearGear and presented in a manner that provided no opportunity for negotiation over any provision of the Terms.

21. To complete an order on KlearGear.com, a consumer is required to electronically "check" a box on the website next to the statement, "I have read and agree to the KlearGear.com Terms of Sale." These Terms appear on a separate webpage accessible via a web link. No provision of the Terms was explained to John Palmer. On information and belief, no provision of the Terms is explained to any customer. It is not possible for a customer to make an online order with KlearGear without checking the box indicating agreement to the Terms of Sale and Use.

22. In response to KlearGear's demand, John Palmer explained to Gutman, over the course of several emails between May 29 and June 4, 2012, (1) that the "non-disparagement clause" was not in the Terms of Sale and Use at the time of John's order from KlearGear; (2) that John did not write the review on RipoffReport.com; and (3) that RipoffReport.com has a policy of not removing reviews so John did not have control over whether the review remained online.

23. Regarding whether the "non-disparagement clause" appeared in the Terms of Sale and Use in 2008, Gutman responded that "[b]usiness agreements are organic and subject to change." Regarding the author of the post, Gutman maintained that "[i]f you disparaged

KlearGear.com to another person who published negative content, you have still breached the terms of our sales contract." Regarding John's ability to remove the content, Gutman stated that, notwithstanding RipoffReport.com's policy, "this matter will remain open until the published content is removed."

24.     In his first email to John Palmer on May 29, 2012, Gutman specifically threatened that the $3,500 "account" would be "reported to credit bureaus until paid," and all of Gutman's emails contained a notice at the bottom threatening to submit a negative credit report to a reporting agency "if you fail to fulfill the terms of your credit obligations."

25.     Worried that Gutman would follow through on his threat to file a negative credit report, the Palmers monitored John's credit throughout the summer of 2012.

26.     A negative report appeared on John's credit reports from two of the three major credit reporting agencies, Experian and Equifax, in August 2012, reflecting a $3,500 debt with KlearGear as creditor.

27.     On information and belief, KlearGear reported John's alleged "debt" to the credit reporting agencies.

28.     After seeing the negative report, the Palmers immediately called Experian and Equifax to dispute the $3,500 debt.

29.     On August 27, 2012, John received another email from Gutman stating that, under KlearGear's "Chargeback/Dispute Policy," John now owed KlearGear an additional $50 "[d]ue to a recent dispute."

30. KlearGear's "chargeback and dispute policy," contained within its Terms of Sale and Use, stated at the time of John Palmer's original transaction that KlearGear charges a $50 fee "should KlearGear.com not be given an opportunity to resolve any dispute as provided in this section," and further provides that the customer agrees to "allow KlearGear.com to attempt settlement of any order-related or billing-related dispute for 30 days before disputing with any third party, credit card company, or bank."

31. After John Palmer explained by email why he did not owe this additional $50, he received an email on August 28, 2012, from Legal@kleargear.com, this time signed by Michael Brock of KlearGear's Legal Affairs department, stating that: "When a dispute is received by a credit bureau, the process they follow is to contact the merchant and confirm that the debt is valid or not [sic]. We received this request today from Experian and confirmed that it is valid."

32. In November and December of 2013, KlearGear repeated to media organizations the allegation that John Palmer owed the $3,500 fine, and KlearGear's allegation was publicly reported by those organizations. *See* Pamela Brown, *Couple fined for negative online review*, CNN.com, Dec. 4, 2013, *at* http://www.cnn.com/2013/12/02/tech/couple-fined-for-negative-review; Matt Gephardt, *Fined for Posting a Negative Review Online*, KUTV.com, Nov. 21, 2013, *at* http://www.kutv.com/news/features/gephardt/stories/vid_474.shtml.

33. John Palmer's credit report from Equifax currently reflects that the alleged $3,500 "debt" was at some point referred to Fidelity for collection.

**Consequences of KlearGear's Actions**

34. As a result of KlearGear.com's negative report about John Palmer's credit and KlearGear's insistence that the debt was valid after the Palmers disputed it with the credit reporting agencies in August 2012, the Palmers were subject to economic disadvantage, delay, and outright denial in attempting to obtain credit, including in the following instances:

   a. Despite having been pre-approved for a loan to purchase a car from Cutrubus Volkswagon in Layton, Utah, in December 2012, the Palmers' loan was delayed approximately one month because the Palmers had difficulty securing a lender, and (on information and belief) the Palmers paid a more expensive interest rate than would have applied without John's alleged KlearGear "debt" on his report;

   b. American Express refused to issue John Palmer a personal credit card; and

   c. When the Palmers' furnace broke in October 2013, they were denied credit to pay for a new furnace, and as a result, the Palmers and their three-year-old son were left without heat in their home during three cold weeks until the Palmers had saved enough money to buy a new furnace without credit.

35. Additionally, as a result of KlearGear's negative report about John Palmer's credit and KlearGear's insistence that the debt was valid after the Palmers disputed it with the credit reporting agencies in August 2012, the Palmers also suffered the following injuries:

   a. The Palmers were deterred, in the spring of 2013, from seeking to refinance their home or secure a home equity loan for important roof and window

      repairs, because the Palmers knew from their experience with the car loan that they would have trouble securing credit;

b. The Palmers currently wish to sell their home and purchase a new one, but they have not done so because they know from experience that they will have difficulty securing credit for a new home purchase;

c. The Palmers have experienced injury to reputation, anxiety about their financial circumstances, humiliation and frustration at being treated as financially irresponsible and at being interrogated by potential lenders about their alleged "debt" to KlearGear, concern for the well-being of their young son during the period when their house had no heat because of the Palmers' inability to obtain credit to replace their broken furnace in October 2013, and other emotional distress; and

d. From August 2012 through the present, the Palmers have spent numerous hours trying to convince the credit reporting agencies to remove the erroneous report from John's credit report and trying to obtain credit from lenders reluctant to lend money to the Palmers because of the erroneous report on John's credit.

36. KlearGear's re-publication in November and December 2013 of the allegation that John Palmer continues to owe KlearGear a valid debt perpetuated the injury to John Palmer's reputation caused by KlearGear's initial false report about John's credit.

## CAUSES OF ACTION

### COUNT ONE: Declaratory Judgment Act, 28 U.S.C. § 2201
### (against all defendants)

37. There is an ongoing controversy between the Palmers and KlearGear (and/or Fidelity) regarding whether John Palmer owes KlearGear (and/or Fidelity) money because of KlearGear's "non-disparagement clause" and/or "chargeback and dispute policy." KlearGear's insistence that the debt is valid is causing continuing injury to John Palmer's credit and therefore continuing economic and consequential harms to the Palmer family as described above.

38. The Palmers seek a declaratory judgment that John Palmer's alleged "debt" arising out of KlearGear's "non-disparagement clause," and any other alleged "debts" premised thereon, are null and void, for each of the following reasons:

   a. The "non-disparagement clause" is not binding on John Palmer because it was not included in KlearGear's Terms of Sale and Use at the time of his transaction and because he never agreed to it;

   b. John Palmer did not violate the "non-disparagement clause" because he did not write the critical review on RipoffReport.com;

   c. The "non-disparagement clause" is void as procedurally and substantively unconscionable;

   d. The "non-disparagement clause" is unenforceable under the First Amendment because the appearance of such a term in a contract of adhesion is not a voluntary, knowing and intelligent waiver of a constitutional right, and any

11

       attempt to enforce such a term in court would invoke the power of the state so as to constitute state action; and

    e.   John Palmer did not violate the terms of the "chargeback and dispute policy" because he disputed the alleged "debt" directly with KlearGear.com by email between May 29 and June 4, 2012, which was more than 30 days before he disputed the debt with any credit reporting agency.

## COUNT TWO: Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)
### (against KlearGear.com)

39. In August 2012, John Palmer's alleged "debt" to KlearGear appeared on his credit reports prepared by Experian and Equifax.

40. The Palmers disputed this debt with both Experian and Equifax.

41. KlearGear received notice of the debt from and confirmed the validity of the debt to Experian.

42. On information and belief, KlearGear also received notice of the debt from and confirmed the validity of the debt to Equifax.

43. The fact that KlearGear confirmed the debt — which it knew or should have known was invalid — demonstrates that KlearGear failed to conduct an investigation with respect to the disputed information, review all relevant information provided by the consumer reporting agency, and delete the inaccurate information, as required by the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

44. The fact that KlearGear could easily have determined that John Palmer did not owe KlearGear any money under the "non-disparagement clause," and in fact was not subject to the clause, demonstrates that KlearGear's breach of its statutory duties under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), was willful within the meaning of that statute, 15 U.S.C. § 1681n(a), and at the very least negligent, 15 U.S.C. § 1681o(a).

45. As a result of KlearGear's failure to investigate, review all relevant information, and delete erroneous information, the Palmers have suffered economic, consequential, and emotional harms, as described in paragraphs 34-35.

## COUNT THREE: Defamation
## (against KlearGear.com)

46. In the summer of 2012, KlearGear reported and then confirmed to one or more credit reporting agencies that John Palmer owed KlearGear a debt of $3,500.

47. In November and December of 2013, KlearGear stated to more than one media outlet that John Palmer owed KlearGear a debt of $3,500.

48. These statements were false and not subject to any privilege.

49. These statements impeached John Palmer's honesty, integrity, and reputation and thereby injured him in the eyes of the statements' audience — both the credit agencies and the public — and exposed him to ridicule and to denials of credit.

50. KlearGear knew or should have known that the statements were false.

51. KlearGear's repeated reports of John Palmer's alleged "debt" when KlearGear knew or should have known that it was invalid and KlearGear's emails threatening to report the

alleged "debt" to credit bureaus if it was not paid, demonstrate that KlearGear acted with reckless disregard for the truth or falsity of its statements or with knowledge that they were false, and that KlearGear acted with malice and willful intent to injure John Palmer in retaliation for his wife Jennifer's critical review of KlearGear and for John's failure to accede to KlearGear's unjustified demands for payment under the "non-disparagement clause" to which he had never agreed.

52.     KlearGear's false reports resulted in economic, consequential, and emotional harms to the Palmers, as described in paragraphs 34-36.

### COUNT FOUR: Intentional Interference with Prospective Economic Relations
### (against KlearGear.com)

53.     By reporting and confirming John Palmer's alleged "debt" to one or more credit reporting agencies in 2012, KlearGear intentionally interfered with John Palmer's prospective economic relations with various lenders by undermining his attempts thereafter to secure credit.

54.     KlearGear's interference with John Palmer's attempts to secure credit was carried out for an improper purpose: retaliating against John Palmer for his wife Jennifer's critical review of KlearGear and for John's failure to accede to KlearGear's unjustified demands for payment under the "non-disparagement clause" to which he had never agreed.

55.     KlearGear's interference with John's attempts to secure credit was carried out by the improper means of a disparaging falsehood — namely, reporting an alleged "debt" that KlearGear knew or should have known was invalid.

56.     KlearGear's reporting of John's alleged "debt" when KlearGear knew or should have known that it was invalid and KlearGear's emails threatening to report the alleged "debt" to credit bureaus if it was not paid, demonstrate that KlearGear acted with malice and with willful intent to injure John Palmer in retaliation for his wife Jennifer's critical review of KlearGear and for John's failure to accede to KlearGear's unjustified demands for payment under the "non-disparagement clause" to which he had never agreed.

57.     KlearGear's false reports resulted in economic, consequential, and emotional harms to the Palmers, as described in paragraphs 34-35.

### COUNT FIVE: Intentional Infliction of Emotional Distress
### (against KlearGear.com)

58.     By reporting and confirming to one or more credit reporting agencies John Palmer's alleged "debt" to KlearGear, which KlearGear either knew or should have known was invalid, KlearGear intentionally and/or recklessly engaged in outrageous conduct.

59.     KlearGear's false reports caused the Palmers severe emotional distress, as described in paragraph 35.

### RELIEF REQUESTED

WHEREFORE, plaintiffs pray that this Court:

A.  Declare that John Palmer does not now, and never did, owe KlearGear or any other party any money based on KlearGear's "non-disparagement clause" or any money based on John Palmer's failure to make any payment allegedly owing under that clause or John Palmer's dispute that he owed any money under that clause;

B.  Award plaintiffs compensatory damages, consisting of plaintiffs' economic, emotional, and consequential damages in an amount to be proven at trial;

C.  Award plaintiffs statutory damages under the Fair Credit Reporting Act;

D.  Award plaintiffs punitive damages;

E.  Award plaintiffs costs and reasonable attorneys' fees incurred in this action; and

F.  Grant such other relief as the Court may deem just and proper.

**Plaintiffs demand a trial by jury.**


Dated:  December 18, 2013                    /s/ Scott Michelman
                                             Scott Michelman, D.C. Bar No. 1006945
                                                 (pro hac vice application pending)
                                             Paul Alan Levy
                                             Public Citizen Litigation Group
                                             1600 20th St. NW
                                             Washington, DC 20009
                                             (202) 588-1000
                                             smichelman@citizen.org

                                             Lester A. Perry, Utah Bar No. 02571
                                             Hoole & King
                                             4276 South Highland Drive
                                             Salt Lake City, UT 84124
                                             (801) 272-7556
                                             lap@hooleking.com

                                             *Counsel for Plaintiffs*